Judge Tugkek.
The first exception taken to the proceedings in the County Court is, that the summons to shew cause against erecting the mill was directed to Thomas Coleman, executor and trustee of Thomas Rowlett, deceased; whereas the law requires the summons to be issued to the proprietor or tenant of the lands located, or found liable to damage. There are two answers to this objection.
The first is, that the original notice of the intended application for leave to build a mill, is directed to Coleman as acting trustee and executor, &c. and recites, that 65 he *16 u hath lands above the said place on the said stream, vested “ in him in trust for certain purposes,” &c. The second is, that Coleman appeared, in consequence of the summons, and contested the petitioner’s right, on the ground of inconvenience and injury to himself,- thereby admitting' himself to be the proprietor or tenant. And, having taken no exception to the summons on the ground now taken, he cannot do it in this Court; this case coming within the reason of the rule at common law, that appearance, and pleading to the action, cures all defects in the process.
The second objection is, that the clerk had in the writ of ad quod damnum taken upon himself to state the precise height, to which it was proposed to raise the mill-dam. This, however, was pursuant to the original notice, and was perfectly right. The Jury were not to inquire to what height it was necessary, for the petitioner’s purposes, to raise the dam, but what injury would ensue to others, if h© were permitted to raise his dam so high.
The third objection is, that the Jury have said that a dam of the proposed height will in their opinion “ over- “ flow three acres of land belonging to the estate of Tho- “ mas Rowlett, deceased, together xuith all other damages, “ to the value of fifty dollars,” &c. And that this finding will operate as a bar to a recovery against him for any other damages hereafter. This must depend upon circumstances. For the law declares that neither the inquest of the Jury, nor the opinion of the Court shall bar any prosecution or action, which any person would have had in law, other than such injuries as were actually foreseen and estimated by the Jury. Suppose it should happen that six acres of land, instead of three acres, should be overwhelmed: or that any house, office, garden, or orchard on the premises,' should, in fact, be injured or overwhelmed thereby. Would this return upon the inquisition bar an action in such cause ?
The fourth objection is, that several of the Jury, perhaps the whole, drank ardent spirits at the house of the pe *17 iitioner, before they proceeded upon the inquisition, and again before the same was completed and signed by them.
The purity of the trial by Jury, and more especially the incorruptibility of jurors, are subjects of supreme importanee, in a country whose constitution declares, that that mode of trial ought to be held sacred. And I am oí opinion, that the same jealous vigilance ought to be exercised in cases ol' inquests of office, as in trials at common law. The reason is even stronger. The latter are had under- the eye of a Court of justice, which, if it observer; my thing improper in tire conduct of a Jury, will immediately set aside the verdict. Inquests of office are taken hi pais; the supcrintcndance of the sheriff may not always be adequate to the prevention or discovery of improper practices. No kind of bribe, or other evil practice, so soon finds its way to the bead, as intoxicating liquors. Our act concerning roads (ed. 1794, c. 19.) prohibits a juror, on pain of being discharged from the inquest, and immediately imprisoned by the sheriff, from taking anything of meat or drink from any person whatsoever, from the time they come to the place until their inquest be sealed. The act for removal of the seat of government; to this place contains a similar provision, (May,1779, c. 21.) and both appear to me to have been dictated in the true spirit of the common law, and of consummate wisdom and foresight. The omission of a similar provision in the act concerning mills, probably proceeded from the opinion of the legislature, that a repetition of such a provision in every act authorising an inquest, was, upon the principles of the common law, unnecessary, as being implied in all cases of the kind. In the present case, the fact is not denied ; on the other hand, Mr. Coleman was present, and is not only said to have consented that the jurors, who were assembled at a late hour of the day in the month of 'July. should partake of the slight refreshment set before them, (a quart decanter of spirits brought out to a company of twenty or five and twenty persons assembled at the petitioner’s house,) but, set them an example, by taking a glass *18 of spirits and water himself, before they set out to view the lands. No other impropriety of conduct seems to be chargeable to the July, until they had agreed on their report. They ate and drank at the petitioners house, either before or immediately after the inquisition was signed.\ which was sometime after night, Mr. Coleman staying with them and partaking of the same refreshments, and staying afterwards all night. These circumstances afford a strong apology for all that happened. Yet I am afraid of shaking great and fundamental principles. I dread the effect of the precedent, should we decide that they may in any case, except absolute, unavoidable necessity, be departed from. No line is so easy to define as a strait one ; and if the least departure from that be permitted, it will be difficult, if not impossible, to draw one capable of application' in all cases of this nature. On these grounds, I am inclined to think We ought (for the sake of avoiding what may operate as a dangerous precedent) to set aside this inquisition: though I am well satisfied with the judgment, both of the County Court and the District Court, upon every other ground.
Judge Roane.
Upon a thorough consideration of the testimony in this cause, I am of opinion that the appellee ought to have leave to raise his dam according to the prayer of his petition. If, however, the testimony were doubtful, I should certainly respect the concurring judgments of the County and District Courts, tribunals sitting in the neighbourhood, as was done by this Court in the case of Home v. Richards, 2 Call, 507.
As to the objections taken to the regularity of the proceedings, none of them, in m'y view, are important.
The ’inquisition having found that damage would be done to'the estaté of Thomas Rowlett, deceased, it became the duty of the Court to issue a summons to the tenant or proprietor" thereof. The Court ordered one to be issued to Thomas Coleman, who is also stated therein to be tc trustee and acting executor of Thomas Rowlett, deceased.” *19 Coleman appeared and contested the motion on the merits. After this, we are not at liberty to say without any evidence to that effect, (and thus convict the County Court of error in issuing the summons to an improper person,) that he was not, in fact, the tenant or proprietor ol the land within the meaning of the act. He might have been so, the description given to him, of “ trustee and execu- “ tor,” notwithstanding.
As to the notice given to him by Moody, in that character, in the first instance, it was mere supererogation, and consequently will not affect his rights.
With respect to the objection to the writ of ad quod damnum, in that it confines the Jury in their estimation of damages to the height of fifteen feet two inches, the answer is that the writ corresponds in this respect with the real application to the Court, and being, besides, beneficial to the opposing party, cannot be objected to on this ground by him.
As to the objection to this inquisition on the ground that the Jury drank some spirits and water at the cost of the appellee ; while I heartily join with the Judge who preceded me in wishing to keep the jury-trials as pure as possible, and also think, with him, that, in general, the same necessity for circumspection equally holds in relation to inquisitions of office which are held in pais and out of the sight or control of a Court of Justice, I must be permitted to say that nothing shewn in evidence in this case ought to impeach the present verdict. At the same time, also, that I readily make the foregoing admissions,, I do not agree that all the rigid doctrines of the ancient common law in respect to eating or drinking by a Jun , and which are laid down in relation to perhaps a short trial in a comfortable jury-room, equally apply to the laborious duties required by an inquisition in the country, where, from the necessity of the case, the jurors must have a reasonable refreshment. We must not be governed by the letter of the rule under every possible state of things, but take a more liberal and enlarged view of the circumsttiu *20 ces. I presume it will not at this day be contended, that in this laborious service the jurors might not have refreshed' themselves at their own expense: but we are to consider the case as it is, where the refreshment was furnished by one of the parties. In considering this case, we must recollect that the Jury in question was not acting in a populous city where they might have got refreshment at their own cost, and where a party could from no motive, except an interested one, have furnished it at his cost. The jurors summoned on this inquisition had perhaps most of them rode many miles that day ; there was, probably, no public house near, from which refreshment could have been obtained; the weather was, probably, very hot; and therefore a kind of necessity existed for the appellee’s offering, and their accepting, the trivial refreshment now made the ground of opposition to the verdict. The cha-’ racier for hospitality of our countrymen, too, ought not on this occasion to be entirely lost sight of. That circumstance, perhaps, taken in connection with the real necessity of the case, furnishes a clew for the offer in the present instance very distinct from any view to corruption on the part of the appellee. If the terms of the act concerning roads has expressly inhibited all kinds of refreshment to the Juries who are acting upon them, notwithstanding the possible hardships which may result therefrom to the jurors, the omission to insert a similar provision in the act respecting mills leaves those cases on the footing of the common law; in applying the provisions of which, however, we must adapt them to the circumstances of the case, and so as to effect a reasonable and substantial compliance therewith, rather than a literal one. So far as the provisions of the statute are express and imperious, let them prevail; but, as to any case not embraced by it, let such case be considered independently of its provisions.
I need not, however, consider the present case in a general point of view. The testimony in the cause shews, abundantly, that Coleman consented that the Jury should take some refreshment, and set them the example. We *21 do not sit here to lay down mere abstract propositions, but to administer justice : and shall we set aside a verdict, in favour of a man who is proved to have deliberate!y and freely waived the objection which his counsel long after may think proper to set up ? We are in the habit, every day, of disregarding errors which are beneficial, or not injurious to parties, or to which they have bound themselves not to object. On this ground, and referring particularly to the testimony in the cause in support of this part ot my opinion, I must think the verdict in the present case ought not to be impeached, and that the judgment ought tO be AFFIRMED.
Judge Fi.emikg.
The only difference in the opinion of the Court, arises from the circumstance of the Jury having taken a little refreshment of spirits and water, in the first instance, before they were impanelled and sworn, and after they had finished their examination and were on their íeturn towards the house, they took a drink of grog ; (says Baptist, the sheriff;) and after returning to the house, they reported their verdict, and whilst he and the surveyor were writing the inquisition, they took some spirits and water ; hut neither the sheriff nor Mr. ^uie (another respectable witness who spoke of these circumstances) saw any thing like intoxication in either of the jurors.
Although the law, in order to preserve the purity of trials by Jury, (justly considered as one of the chief excellences of our constitution) has inhibited jurors from taking either meat or drink, or even the use of fire or candle, whilst consulting of their verdict, which, says Lord Coke, some books call an imprisonment,(a) thos e rules are more strictly observed in England than they are, or ought to be, in this country, where the habits, manners and genius of our people are widely different. Though here, I should be far from countenancing or tolerating embracery, or any thing that might tend to corrupt or bias the minds of a Jury ; but in the case before us nothing of the kind, to my mind., appears : and I am persuaded that the appellee had *22 no sinister object in view, in producing the spirits spoken of in the evidence, but was actuated merely from a motive of hospitality and kindness, for which our citizens are generally distinguished: and I am the more confirmed in this opinion, from the circumstances of his caution in consulting the appellant, (the only person to be affected by the verdict of the Jury,) who readily gave his assent, and set an example himself, by taking a drink of grog before either of the jurymen ; and it is laid down in Co. Litt. 125. b. “ that all defects in convening or in the qualifea- “ tions of the jurors, arc aided by consent of parties ; for “ the rule herein is, that omnis consensus tollit erroremA If, then, the consent of parties takes away error in the. qualifications of jurors, I can perceive no good reason why such consent should not take away the error of their taking a little refreshment in a hot summer’s day ; but the taking such refreshment before they were impanelled and sworn, is not prohibited by the strict law in England $ which, however, is admitted to be the law here also.
On this view of the case, then, I am of opinion, that the verdict was uncorrupt, and ought to be sustained, and that the judgment of the Court below ought to be affirmed.
By a majority of the Court, (absent Judge Lyons,) the judgment of the District Court was affirmed ; Judge Tucker dissenting on the point of the refreshment taken by the Jury, only.

 Co. Litt. 227. b